**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:17-CV-00747

IVETH CASTRO OCHOA, an individual,

  Plaintiff,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a

Wisconsin corporation,

  Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

  Plaintiff, Iveth Castro Ochoa, by and through her attorneys, Thomas L. Roberts of T.L. ROBERTS, ATTORNEY AT LAW, and Dan Bonifazi of NEMKOV & BONIFAZI, PLLC, for her Complaint against American Standard Insurance Company of Wisconsin, states and alleges as follows:

## I.  PARTIES AND JURISDICTION

  1.  Plaintiff Iveth Castro Ochoa ("Ochoa") at all times pertinent, was and is a resident of the State of Colorado.

  2.  Defendant American Standard Insurance Company of Wisconsin, a member of the American Family Insurance Group, is a Wisconsin corporation with its principal place of business located in the State of Wisconsin ("American Family").

3.      Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to the claims occurred in the State of Colorado.

## II.  NATURE OF CASE

5.      This action arises from American Family's unreasonable handling of and failure to settle a third-party claim against Ochoa brought by Tara Lucero ("Lucero"), a passenger on a motorcycle, who was severely injured in a collision involving Plaintiff's vehicle and two motorcycles, which were also insured by American Family.  The collision  resulted in injuries to the operators and passengers on the motorcycles.  American Family did settle one other party's claim who was not a severely injured as Lucero.

6.      American Family's failure to resolve Lucero's claim within Ochoa's insurance policy limit when it had the duty and opportunity to do so resulted in a trial in Arapahoe County District Court in which the jury awarded damages against Plaintiff in excess of $4.2 million.

## III.  FACTUAL ALLEGATIONS

7.      On June 21, 2014, Lucero was riding as a passenger on a motorcycle operated by Terrance Carson ("Carson") when they were struck by a vehicle being operated by Ochoa, who witnesses reported failed to obey a red traffic signal, causing each of them to suffer significant personal injuries (the "Accident").   Another motorcyclist, Kevin Breedlove ("Breedlove"), and his passenger, Danielle Lucero, Tara Lucero's sister, also sustained injuries in the Accident.

8.　　At the time of the Accident, Ochoa was insured under an American Family automobile insurance policy with liability limits of $50,000 per person injured in a single accident, subject to an aggregate limit of $100,000 for all persons injured in a single accident (the "Policy").　The insurance contract (Policy No. 2316-3629) between the parties was entered into, delivered, and to be performed in the State of Colorado.

9.　　Ochoa notified American Family of the Accident the following day and American Family took her recorded statement.

10.　　Breedlove's wife also notified American Family of the Accident and the injuries sustained by Breedlove, Carson, Lucero, and Danielle Lucero and advised that her husband and one or more of the other injured parties had retained counsel to pursue their respective personal injury claims.

11.　　On July 3, 2014, American Family opened a claim file for Lucero's claim against Ochoa, noting as follows: "four injured clmts [*claimants*] on two motor motorcycles - some injuries appear serious - 50/100 BI [*Bodily Injury*] limits and no umbrella" and described Lucero's injuries as: "Compound break in right leg, head injury, extreme blood loss, also lost skin & muscle tissue.　Tara will be going through her 3d [*third*] surgery."

12.　　With the assistance of a Spanish speaking interpreter, American Family contacted Ochoa that day to advise her that there was an "early indication of possible excess BI exposure."

13.　　July 2014 entries in Lucero's claim file reflect the following facts: the seriousness of Lucero's injuries; that both motorcycles were also insured by American Family; that Carson had retained legal counsel; that the investigating Highway Patrolman believed

that Ochoa failed to stop at the traffic signal; and that Carson had received a D.U.I citation; and that American Family had "put up" Ochoa's $100,000 policy limit as a reserve against anticipated claims.

14.     Nearly three months after the Accident, American Family documented that it required additional information to finalize the liability assessment, had no new information on the injuries, and was awaiting a decision as to how to proceed with handling of bodily injury.

15.     On October 2, 2014, the Gold Law Firm ("GLF") notified American Family that it had been "retained to represent Lucero for injuries she sustained" in the Accident.

16.     On October 27, 2014, having heard nothing from American Family, GLF filed a lawsuit against Ochoa on behalf of Lucero in the Arapahoe County District Court [Case No. 2014-CV-32807] on October 27, 2014 (the "Lawsuit"), seeking compensation for the injuries she sustained in the Accident.

17.     On November 6, 2014, American Family contacted GLF and learned that: Lucero was having ongoing issues with her leg; it was still not certain whether her right leg might need to be amputated; she recently had another surgery to address skin and nerve damage; that she was receiving home care; and GLF had filed (but not yet served) a lawsuit on her behalf.

18.     The Lawsuit was served on November 20, 2014, and five days later, American Family appointed counsel, Colin Campbell of Campbell, Latiolais & Averbach, LLC (the "Campbell Firm"), to defend Ochoa in the Lawsuit pursuant to the Policy.

19.     On December 5, 2014, American Family adjuster Graas received an email from

GLF attaching a letter captioned "**TIME LIMITED POLICY LIMITS DEMAND**," offering to

settle their client's claim against Ochoa within Ochoa's available limit, stating, in pertinent

part that:

> . . . we are offering a onetime settlement offer of the policy
> limits.  Please advise your client that this is a one-time
> settlement offer, which will only be in effect for the next 30
> days.

20.    American Family confirmed receipt of the policy limit demand by return e-mail, but

failed to advise Ochoa of the offer or its time-limited nature.

21.    On December 11, 2014, while the policy limit demand was pending with no notice

to Ochoa or attempt to resolve the matter, the Campbell Firm filed an Answer on behalf

of Ochoa denying any liability for the Accident and blaming Lucero and others for her

injuries.

22.    On December 17, 2014, counsel from GLF and the Campbell Firm conducted a

case management conference during which defense counsel acknowledged that Lucero

had been hospitalized for over six weeks, had undergone multiple surgeries; the amount

of her damages no doubt exceeded the $50,000 policy limit; and discussions with

American Family and review of the claim file indicated that the company was "disputing

liability."  No request for photographs depicting Lucero's injuries, or for any other

information that might assist American Family in determining whether to accept the time-

sensitive demand.

23.    On December 29, 2014, American Family in-house counsel ("Babcock")

acknowledged to Campbell that there was a liability dispute with both Ochoa and Carson

claiming each had a green light, given the "apparent severity" of Lucero's injuries and a 50/100 policy limit that he "might want to explore settlement within the deadline for the time limited demand (January 4, 2015)."

24.    In a January 2, 2015, message, Babcock tells Campbell that even if inclined to settle Lucero's suit for the full policy limit, other factors including the lack of documentation of Lucero's injuries and lack of information about the injury levels of the other three cyclists, would prevent him from taking that step.

25.    On January 4, 2016, the 30-day time limited offer to settle Lucero's claim for payment of the $50,000 single limit expired of its own terms.  American Family allowed the period to accept the offer to expire without informing its insured of the fact or consequences to Ochoa of allowing the offer to lapse.

26.    On January 5, 2015, attorney Campbell asked GLF for more time to allow American Family to determine whether to accept the settlement offer, which request was declined, and Campbell responded stating that American Family "cannot evaluate damages until we receive the medical bills and records to describe what the injuries and cost of treatment actually are."

27.    On January 14, 2015, GLF filed Lucero's Initial Disclosures and attached photographs depicting the condition of her leg, but not including medical records or bills.

28.    Two days later, Campbell emailed GLF, stating that based on the photos of Lucero's injuries, American Family authorized payment of the $50,000 limit in exchange for a release of Lucero's claim and agreement to hold Ochoa harmless from medical liens or subrogation interests.  This belated offer was declined.

29.    Counsel for Lucero, consistent with established custom, practices and the standard of care for attorneys practicing in the field of personal injury in Colorado, rejected American Family's out-of-time belated offer to settle.

30.    American Family allowed Lucero's offer to lapse with no effort to effectuate a settlement, whether by accepting the demand or attempting to settle for a greater amount, without conveying the offer to Ochoa or attempting to explain to her why the offer was not accepted.

31.    Neither American Family nor the Campbell Firm informed Ochoa of the fact of the offer nor suggested that she consider retaining personal counsel to advise her during the 30-day time-period in which the offer could have been accepted.

32.    Attorney Campbell filed a motion to designate Carson as a non-party at fault, without explanation to the client.   The request was granted and as Carson's insurer, American Family was required to provide him with a defense to Lucero's claim by denying personal liability and persuading the jury that Ochoa had sole responsibility for the Accident.

33.    Lucero's counsel was forced to add Carson as a second defendant to avoid the possibility that a jury might find Carson to some degree responsible for the Accident and lessen any verdict in favor of Lucero by that degree.

34.    Not until an April 2, 2015, letter from Campbell was Ochoa told about the 30-day offer and represented that before it expired, his firm has requested an extension of time to respond but Lucero's counsel denied that request.

35.    On October 28, 2015, at the conclusion of a five-day jury trial, the Arapahoe County

jury found Ochoa 100% at fault for causing the collision and returned a verdict in favor of Lucero and against Ochoa in the amount of $4,221,590.81.

36.    Counsel for Lucero filed a proposed judgment in the amount of $4,746,870.88 that reflected the addition of pre-judgment interest on the award.  Campbell objected, arguing that the judgment amount should be offset by any future Medicaid payments for Lucero's care.  The Court ruled in favor of allowing a set-off and referred the motion to a Special Master for determination as to the amount by which Lucero's judgment should be reduced to reflect Medicaid payments.

37.    The Medicaid setoff issue was, as a practical matter, of no benefit to Ochoa and, in fact, caused her harm by prolonging the litigation, thereby increasing the judgment amount by accrual of pre-judgment interest.

38.    More than a year later while the Medicaid issue remained pending, on November 22, 2016, Campbell informed counsel for Lucero that American Family would tender the $50,000 per person policy limit, plus prejudgment interest only on that limit in the amount of $2,600, if Lucero assured American Family in writing that it would have no exposure to any lien interest in the payment, including Medicaid.

39.    On November 29, 2016, counsel for Lucero, subject to reserving Lucero's right to argue entitlement to recover on the entire judgment interest under the policy's Supplemental Payments provision, provided the requested assurance and American Family paid Ochoa's policy limit with interest.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
(Breach of Contract)

40.    Plaintiff incorporates by reference each and every allegation stated in the paragraphs above and below as if fully set forth herein.

41.    Implied in every contract is a covenant of good faith and fair dealing requiring the parties to perform their obligations under the contract honestly with due regard to the purpose of the contract and that neither party will act to deprive the other of the benefits of the contract.

42.    Ochoa's insurance contract required American Family to promptly, diligently, and objectively investigate and evaluate Lucero's claim against her and undertake all reasonable efforts to resolve that claim by paying the $50,000 policy limit to provide Ochoa immunity from liability against claims made against her by third-parties, including Lucero.

43.    After the excess verdict was awarded against its insured, American Family was obligated to pay, as a covered benefit, the $50,000 policy limit with interest, and costs, but failed to do so without a reasonable basis.

44.    American Family breached the contract of insurance, as a result of which Plaintiff is entitled to recover all foreseeable damages flowing from Defendant's breach of the insurance contract, with interest, in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
(Bad Faith Breach of Insurance Contract)

45.    Plaintiff incorporates by reference each and every allegation in the paragraphs above and below as if fully set forth herein.

46.    As a liability insurer, American Family owed Ochoa quasi-fiduciary duties of good

faith and fair dealing, which included the obligation to take all reasonable steps to protect her from personal exposure to claims asserted against her by third-parties, including the Lawsuit.

47.    By its acts and omissions described herein, American Family engaged in an unreasonable course of conduct by, among other things, failing to undertake action to investigate and settle Lucero's claim without waiting for an offer to do so, declining to accept a policy limit offer made in December 2014 that remained open for 30 days, and by otherwise failing to settle or resolve the claim prior to or following the entry of the jury's verdict.

48.    American Family's conduct falls below the applicable standard of care for liability insurers handling liability claims in this jurisdiction, in violation of the covenant of good faith and fair dealing implied in the American Family Policy.

49.    American Family has engaged in a course of unreasonable conduct in its handling of and failure to settle Lucero's claim without trial, leading to the excess judgment against its insured, including, but not limited to, the following acts and omissions:

     a.    Failing to undertake prompt action to investigate and settle Lucero's claim without waiting for an offer from Lucero to do so;

     b.    Declining to accept Lucero's policy limit offer made on December 5, 2014 during its 30-day pendency;

     c.    Otherwise failing to settle or resolve the claim prior to or after judgment and continuing to only pay its $50,000 policy limit and pre-judgment interest on

that limit;

d.      Engaging in conduct prohibited by C.R.S. § 10-3-1104(1)(h); as applied by C.R.S. § 10-3-1113(4);

e.      Honoring form over substance by refusing to value Lucero's claim as excess of the $50,000 policy limit knowing that she had undergone a six-week hospitalization with multiple surgeries unless medical records and bills were provided and photos of Lucero's injuries were available;

f.      Failure to convey settlement offers to the insured;

g.      On information and belief, American Family's conduct in handling the Lucero claim was inconsistent with and violated its internal standards for handling third-party claims;

h.      Other unreasonable acts and omissions reflected in American Family documents; and

i.      Conduct to be revealed in discovery.

50.     American Family's actions were unreasonable and committed in disregard of Ochoa's reasonable expectations.

51.     American Family's bad faith breach of the insurance contract was a proximate cause of Ochoa's damages, losses and injuries, including economic damages, in the full amount of the judgment entered against her in the Lawsuit, non-economic damages to compensate her for her emotional stress, anxiety, upset, anger, and loss of enjoyment of life and other economic and non-economic losses as may be proven at trial.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
(Statutory Bad Faith Pursuant to C.R.S. §§ 10-3-1115 & 1116.)

52.    Plaintiff incorporates by reference each and every allegation stated in the paragraphs above and below as if fully set forth herein.

53.    C.R.S. § 10-3-1116 (1) provides "A first party claimant as defined in C.R.S. § 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

54.    Ochoa's policy limits are covered benefits within the meaning of the statute.

55.    Defendant's failure to act promptly and proactively to pay its $50,000 policy limit was without reasonable basis, both before and after entry of the excess verdict against Ochoa, in violation of the above statute when American Family refused to tender its liability limit to resolve this matter without trial which it clearly had the opportunity to do after receipt of the 30-day policy limit on December 5, 2014 which was not communicated to Plaintiff before it expired.

56.    Defendant's delay and denial of covered benefits were without reasonable basis and in violation by failing to protect its insured by timely acceptance of the settlement offer by payment of the $50,000 policy limit demand on or before the 30-day deadline exposing Plaintiff to a judgment now in excess of $5,000,000 when Defendant knew or should have known that Lucero's injuries were catastrophic, entitling her to damages, the damages for which plainly exceeded the $50,000 policy limit.

57.    Pursuant to the above statute, Plaintiff is entitled to recover damages in the amount

of two times the covered benefit, her reasonable attorney fees and costs incurred in pursuing

this litigation, and such other relief as the Court may deem appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter

judgment in her favor and against American Standard Insurance Company of Wisconsin,

and grant the following relief:

A.      For compensatory economic damages in amounts to be proved at trial;

B.      For compensatory non-economic damages in amounts to be proved at trial;

C.      For all pre- and post-judgment interest, statutory and moratory, as allowed

by law;

D.      Statutory damages allowed by C.R.S. § 10-3-1116(1), including two times

the amount of the covered benefit, the payment of which was delayed or denied, Plaintiff's

reasonable attorney fees and costs incurred in prosecution of this action as allowed under

§ 10-3-1116(1);

E.      For reasonable costs of suit herein; and

F.      For such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

**DATED** at Denver, Colorado, this **24th** day of **March 2017**.


NEMKOV AND BONIFAZI, PLLC          T. L. ROBERTS, ATTORNEYS AT LAW


By: */s/ Dan Bonifazi*                    By: /s/ Thomas L. Roberts
Daniele W. Bonifazi                       Thomas L. Roberts
1873 Bellaire Street, Suite 1401          1001 S. Monaco Parkway, Suite 360
Denver, CO 80222                          Denver, CO  80224
Telephone:  (720) 208-0111                Telephone:  (720) 639-2870
Facsimile:   (720) 208-0130               Facsimile:   (720) 639-2869
Dan@NBColorado.com                        tlr@tlrobertslaw.com
Attorneys for Plaintiff


Plaintiff's Address:
Iveth Castro Ochoa
17051 Foxton Drive
Parker, Colorado  80134